Porter versus the Department of Veterans Affairs, 2023-1303. Mr. Petrie? MR. PETRIE. Petrie, yes. Good morning, Your Honors. May it please the Court, I am A. Marcus Petrie on behalf of the petitioner, Ms. Tiffany Potter. As you are aware, we are here today for the third time concerning the application of the Whistleblower Protection Act in response to the Department of Veterans Affairs personnel action in this case. It is the petitioner's argument that the way that the administrative judge applied the law in this decision was so arbitrary, capricious, and unsupported by substantial evidence. This Court would feel obligated to vacate that decision and remand this case for corrective action with an appropriate application of the law. In the A.J.'s decision, much of it was spent unfairly attacking the credibility of Ms. Potter in order to rule that all the accountability MS. POTTER. Is it your view that her credibility should not be an issue here? MR. PETRIE. No, Your Honor. We agree with the government that the A.J. This Court's precedent requires a weighing of all pertinent evidence and recognizes that it's the A.J.'s duty to make credibility determinations to resolve conflicting evidence. However, our argument is that the A.J. failed to point to conflicting evidence in order to justify the application of Hillen to attack Potter's credibility and used those unsupported credibility determinations to reach a decision unsupported by the facts. Our argument is that MS. POTTER. There's a lot here. There were a lot of factual issues. There were a lot of issues disputed, including witnesses' credibility. Aren't you asking us effectively to re-weigh all of this evidence in your favor? MR. PETRIE. No, Your Honor. MS. POTTER. This is just an odd task to be before us here because it's so specific to the evidence that was submitted here, including credibility determinations and all of this stuff. MR. PETRIE. No, Your Honor. We're not asking to rewrite all the factual. What we're asking you to do is apply the facts to the actual law, and that is what the judge did not do. And in Anderson v. City of Bessemer he did not take his findings from review by denominating them credibility to determinations. And we – it's our argument that that is exactly what the judge MR. POTTER. All you're asking us to do is what? Apply the law to the facts? MR. PETRIE. Apply the facts to the applicable law. MR. POTTER. Can you give us a couple of examples of why there was not substantial evidence or whatever standard you're using? MR. PETRIE. Yes, absolutely. There's a lot here, and there are a lot of determinations. I'm not going to swear behind everything the A.J. said in terms of credibility or whatever, but we're taking the record in its entirety, including the deference we showed to weighing the evidence. So I'm having a hard time understanding what justifies the remand here. MR. POTTER. Absolutely. So there were several clear error findings. Apex, Appendix 15 to 16, when the judge found that Deering's frustration with IG complaints was only concerning anonymous complaints, when the facts showed that he was frustrated with all IG complaints, and there was Appendix 25 to 26. MR. PETRIE. Can I just slow you down a second? Where does the A.J. say the A.J. says 15? MR. PETRIE. 15 to 16. MR. POTTER. I hear you saying that. Can you show me where 15 and 16? MR. PETRIE. Yes. MR. POTTER. Is it the second, the paragraph that starts second? MR. PETRIE. Yes. MR. POTTER. The evidence shows Deering was only modestly frustrated with the IG's investigation. I find nothing blameworthy in that attitude realistically. MR. PETRIE. Oh, I'm sorry. Yes, APS 16, third paragraph. Third, Deering admitted frustration was with responding to anonymous complaints, which has nothing to do with today's issue, whether he canceled a vacancy on November 1, 2015 because of appellant's non-anonymous July 10, 2014 email. MR. POTTER. So you would have us find that that's a clearly erroneous finding? MR. PETRIE. Correct, because the facts in the record show he was frustrated with that. Third, when he found that, when he found APPX 34, finding that appellant never actually testified that she told Tadamy she was being retaliated against for Inspector General activity, that's a clear error to the evidence in the record, where Tadamy testified that, yes, she did let me know there was a complaint, and that was as, do you recall Potter stating to you in that meeting or in any other meetings that she felt like she was being retaliated for OIG complaints? She said, I recall Potter telling me that the previous EEO manager prior to me and that she had spoken to her about it and about the complaint and how she was feeling then. She thought that that may have had something to do with the way her situation, about her situation. And there were several other clear errors that I could point to that the judge clearly misapplied the facts in the case. GARY TAYLOR How if at all did those clear errors that we assume that they are help you rebut the finding that there was clear and convincing evidence that the position of chief nurse was going to be canceled independent of what your client said in her whistleblower? GARY TAYLOR Very often. So that's the entire argument. The argument is, I'm sorry? GARY TAYLOR How do you tie those, if you persuade us clear factual errors, how do you tie that to the only issue in the case, which is whether or not there was clear and convincing evidence that that chief nurse's position was not going to be filled? GARY TAYLOR So the way that you tie it is that the judge is tasked with weighing. So when you apply car factors, the agency's evidence, i.e., the agency's evidence for the strength of its, assessing the strength of the agency's evidence in support of its personnel action, when assessing the existence and strength of the agency's motive to retaliate, and when assessing the evidence that the agency takes similar actions against employees who are not whistleblowers, that is the judge's task, to weigh those car factors and determine whether that reaches a clear and convincing evidence burden. The judge is then tasked with weighing the countervailing evidence to determine whether it fairly detracts from that weight. What the judge essentially did in this case was determine that all of the countervailing evidence was irrelevant or harmful based on an improper and unsupported credibility determination against Potter. So essentially what he did was place the burden on Potter to show that the evidence didn't So all of this that you're telling us says we are supposed to say that he made the wrong credibility determination on Potter, that he weighed, improperly gave weight to certain evidence and not to other evidence. It seems like you want us to retry this case or you want us to send it back to him and identify various things like you should have credited her and not him, you should have relied on this and not that. I'm not clear what we're supposed to do with this. It's a hundred page or very long, detailed. There are numerous findings. Again, you're challenging credibility, you're challenging weight. I don't know what we're to do with that given our standard of review. No, Your Honor. What I'm asking you to do is the finding that his finding was clearly erroneous. All of his findings? Some of his findings? Half of his findings? All of his findings. All of his findings are clearly erroneous. That is correct, Your Honor. And isn't substantial evidence the test rather than being clearly erroneous? No. No, Your Honor. It's the substantial evidence has to support a clear and convincing evidence burden. So the substantial evidence that's presented is looked at through the clear and convincing evidence lens. So that's what he's tasked with. He has to find clear and convincing evidence based on the car factors, and this is the agency's evidence, not the countervailing evidence. The Ms. Potter is not tasked with providing countervailing evidence to a clear and convincing evidence standard. And that is what the judge applied. He basically stated because I don't believe anything Potter has said, I'm going to strengthen the agency's case that the facts are clear. To support car factor one, the agency put forth one vague email from Dr. Deering stating we need to have more discussions about the best way to structure the service. The remainder of their evidence is weak at best. In response, the petitioner put forth a plethora of countervailing evidence to detract from that one vague email, including Dr. Deering's own hearing testimony where he stated I don't recall what precipitated this. I just know we had lots of discussion around it. He then went on to state I don't remember specifically what caused us to pull it back. Then he furthered that statement. Equally as impactful was the agency's own management official, Ed Lowe, who testified that there was animosity specifically towards Potter regarding her participation in OIG complaints. He went one step further and stated prior to the OIG report coming out in January 2015, he believed there was animosity towards nurses. He didn't believe there was animosity towards nurses. However, after the report came out, he believed there was animosity specifically towards Potter. Even more damaging was the March 2017 rushed re-recruitment of the chief nurse for a position by Potter's supervisor, Dr. Smith, three days after Potter submitted her letter of resignation to Nelson and the same day that Elaine Ochoa confirmed Potter's release date. Even though the AGA refused to consider whether substantial evidence proved Smith likely knew of Potter's protected disclosures, her motive to retaliate was still relevant in a question the agency needed to address. The fact that it didn't is where the AGA continues to misapply the law. He continues to hold that evidence not in the record is a flaw to the Petitioner's case. However, that is the exact opposite of how WPA cases are evaluated. Counsel, you're into your rebuttal time. You can continue as you wish, or you can save it. I will make one more statement, and I will save the remainder. Once Potter makes out a prima facie case, the burden is on the government to produce evidence that supports their personnel actions. Motives to retaliate, treatment of non-whistleblowers. Evidence that is not produced is to the government's peril, not Potter's. And I will reserve my remaining time. Thank you. Mr. Berg. Good morning, Your Honor. May it please the Court. As Judge Prost points out, yes, there is a lot in the AGA's decision below. The AGA's decision memorializes a thorough consideration of the entirety of the evidence in this case. That is both relevant and that is irrelevant to the issue at hand. To recall, we only have one protected disclosure still remaining in this case. That is the July 10, 2014 email from Ms. Potter to primarily Dr. Deering, the deciding official who decided to cancel the vacancy in November 2015, which is a personnel action at issue. The Administrative Judge weighs the evidence thoroughly, concludes that the majority of the evidence, as articulated by the Administrative Judge at page 6 of his opinion, is mostly unsupported, fallacious, and Ms. Potter's credibility is lacking. That evidence being the evidence that Ms. Potter contended detracted from the agency's legitimate reasons for the credibility, I guess, legal issue that Ms. Potter has attempted to bring before the Court. There is simply no support for the notion that the Administrative Judge, who is tasked with a duty to consider the witness's credibility that come before the Administrative Judge, that the AGA cannot consider the credibility of the whistleblower. Especially, and in this type of case, as we stated in our briefing, particularly 16 through 21 of our brief, that produces an absurd result where the Administrative Judge would need to accept as credible the assertions by the whistleblower and disregard any conflicting evidence in the record that might undermine that evidence. That is simply not the way that this Court has interpreted the AGA's broad duty to assess the credibility of witnesses that appear before the Board. That may be right as a broad legal matter, but in this specific case, which as you've emphasized is a very narrow remand by the time it went back, the third time I think, what could her credibility have to do with the agency's effort to show by clear and convincing evidence that they were going to not fill this position anyway? Well, Your Honor, in this case, and this may be a unique situation. It may not be the case that whistleblower credibility is always relevant to the inquiry. As Your Honor, the undercurrent of Your Honor's question is that it is the agency's burden to establish by clear and convincing evidence that it would have taken the personnel action despite their protected disclosure at issue. In this case, however, the whistleblower makes numerous allegations attempting to discredit the agency's legitimate reasons for taking the personnel action at issue. Whistleblower's credibility inherently has some effect on to what extent the administrative judge is going to weigh the whistleblower's allegations versus the agency's legitimate reasons when weighing the evidence before the administrative judge. In other words, in short, the whistleblower's statements to the extent that they're unsupported, they're tainted by bias, or they're inconsistent with other whistleblower statements or other witness testimony in the record or other documentary evidence in the record need to detract from the weight that the administrative judge would assign to that evidence when weighing it against the evidence that the agency puts forth for the personnel action. Is she somehow a witness to some of the things that the agency is relying on as part of its rebuttal? Is that what you're saying? Well, Your Honor, the whistleblower in this case is a witness to seems to be a witness to many of the things that she testified to when the agency indeed canceled the vacancy in November 2015. She did receive from HR an email noting that the position was not being filled at that time. She is therefore a precipient witness to that event. She's also, of course, a witness to the protective disclosure that she made in July 10, 2014. That is her email. There is much in the case that she is not a witness to, I guess, firsthand. And the AJA takes into account that despite broad assertions made by the whistleblower of connections between actions that were happening around the time within the Phoenix VA and her, again, sole protective disclosure remaining at issue in this case, there simply is no connection between those events. And that detracts, I think, logically, overall, from the credibility of the whistleblower's case before the administrative judge. The counsel opposite made a reference to the Hillen factors. As this Court is aware, this Court does not require a formalistic application of those factors. Numerous cases provide for that proposition, including the Habee case, H-A-E-B-E, that we have cited in our brief. Mr. Petrie also mentioned a broad error of applying the facts to the law incorrectly. He went through a couple of examples at Appendix 15 through 16, the reference being to the administrative judge's weighing of Ms. Potter's allegations around the decision-maker here, Dr. Deering, being frustrated, admittedly, with anonymous IG complaints. We painstakingly go through all of the evidence in our brief for this point, primarily at response brief 28 through 31. We reference, for example, the testimony that is substantial evidence for the administrative judge's reasoning that Dr. Deering was primarily frustrated with anonymous OIG complaints. That is at Appendix 323 to 324. And again, we cite that at our brief at page 28 through 31. Is the finding that he was only frustrated with anonymous complaints? No, it's not, Your Honor. We do point that out at pages 28 through 31 of our brief. It's not that he was only frustrated with that. That is just the response in limited to the scope of the question that he was asked. Again, that testimony is at Appendix 323 to 324. And again, just to level set on where we are, I mean, Ms. Potter's July 10, 2014 protected disclosure, the only disclosure still at issue, is not an OIG complaint, but rather it is a summary of the way that Ms. Potter was responding to an OIG inquiry. And in some sense, therefore, to the extent this issue is about anonymous OIG complaints, it's simply misplaced. Mr. Petrie also mentioned the exchanges between Ms. Potter and TADEMY, T-A-D-E-M-Y. This relates to equal employment opportunity complaints, which as the administrative judge explains at pages 33 and 34 of the appendix, and we echo it response for you 39 through 40, that seeks to change the reprisal theory. Again, the reprisal theory in this case at this point is based solely on the July 10, 2014 email that the court is well aware of. Looking to the rest of my notes, there was some discussion about the evidence in response to the CAR Factor 1. And again, the CAR Factor, as the court is aware, is just pertinent considerations in assessing the agency's independent causation burden showing. There was a reference to a, quote, vague email by Mr. Petrie. The evidence supporting the decision to cancel the vacancy in November 2015 is comprised of many elements, one of which is an email, a contemporaneous November 1, 2015 email from Dr. Dearing, again, the deciding official to HR, directing the cancellation of the vacancy for the reasons being stated there. We need to assess how to structure the service, who this person is going to report to. That email is at appendix 483 to 484. Mr. Petrie, I believe, alluded also to corroborating testimony around that. That's at appendix 295 to 298. We also have other testimony from other officials within the VA who were not involved in the decision to cancel, but nonetheless corroborate underlying concerns within the Phoenix VA about the need to restructure the service, decide who this person is going to be reporting to, which are all legitimate concerns, undoubtedly. And that's, for example, by Mr. Griffin, who was the Medical Center Director, at appendix 270 to 271. I think Mr. Petrie also mentions or seeks to intimate that there was a fuzzy recollection by Dr. Dearing when he was testifying before the Board in October 2018. Again, this is October 2018 when he's testifying, the protected disclosure at issue July 2014. November 2015 is a personnel action, so we're talking about a substantial passage of time. And Dr. Dearing at that point no longer worked at the VA. However, as the Administrative Judge points out, Dr. Dearing's reasons for canceling the vacancy were not undermined on cross. The petitioner had a chance to do that and failed to do that, and that exchange is at appendix 335 to 336. There was some reference on CAR Factor 2 to, I guess, staying with CAR Factor 1 for one more minute. There was a reference to a rush in the re-recruitment of the position in March 2017. There's simply no evidence supporting that there was a rush, and we detail that in our brief as the This is an action that happened after the facts that are relevant to this matter, 16 months later, judging a deciding official's reasons for taking an action based on a future that that deciding official simply had no involvement in. And that is a legitimate reason to discredit that attempt by the petitioner to show that the action being taken here was animus or in retaliation for the sole protected disclosure we have. For the Court's awareness on the motive point, there is no argument made in the petitioner's reply brief countering our presentation in our response brief about the Administrative Judge's findings on motive being supported by substantial evidence. On CAR Factor 3, there was minimal reference to the ability or the consideration there being around similarly situated non-whistleblowers. As the Administrative Judge makes clear, and I believe as this Court has recognized in the past and previous iterations of this case, there simply is no showing in the record of whether the other applicants, there were three additional applicants, were whistleblowers or not. Therefore, the factor under, as this Court has recognized in Whitmore and CAR, I believe as well, falls away and does not bear. It's not a big deal in this case, but I have a hard time understanding and processing the issue with respect to the comparators. If they were whistleblowers, then it would inure not to her benefit, unless you think that they were just trying to exclude all whistleblowers. If they were not whistleblowers, then that cuts in the government's favor, not in her favor, right? I don't know how to process the results. I think that generally is correct, Your Honor, that if the other applicants were shown to be not whistleblowers, they're at least inherently similarly situated in that they all apply for the same position. They all don't get that position. That could inure to the benefit of the government. However, that is a hypothetical, not at issue in the case. What if they were all whistleblowers? Whose benefit does that inure to? That may be a situation, Your Honor, that puts the government on notice. I guess obligates the government potentially to put on evidence about the facts surrounding those individuals more than just the fact that they were whistleblowers. But does it cut against her because that could mean that they were retaliating against someone other than Ms. Potter? I guess I'm having a hard time absorbing which way that would cut. I think there are a lot of facts that are unknown about that situation, Your Honor, and whether it would cut against Ms. Potter or in favor of the government, I think would be a fact-intensive inquiry by the administrative judge below, to the extent that that question presents itself in a different case that's not necessary for this case, where we have strong evidence in support of the agency's legitimate reasons for canceling the vacancy and additionally a lack of motive on the individual involved in the cancellation decision, Dr. Deering, the court, based on the substantial evidence supporting the administrative judge's decision below. We respect the request and affirmance. Thank you. Thank you, counsel. Mr. Petrie has some time left. Thank you, Your Honor. Very quickly, in regards to my counterpart, he stated that there were a lot of facts unknown as regards to CAR Factor 3, and this is exactly why this could not, this CAR Factor could not be a neutral CAR Factor. It was the government's responsibility to put forth all evidence to support each CAR Factor. That's their burden of proof. In regards to Judge Stark's comment concerning the relevance of the whistleblower in regards to the CAR Factors, you are exactly correct. Any evidence that calls into question the whistleblower's credibility should be viewed as countervailing evidence and applied to the analysis after the CAR Factors have been waived. I would argue like it's like an operation of, order of operation in math. You have to come to the, you can't come to the correct answer if you don't follow the correct order. I believe the AJA intentionally reversed the order of analysis of the CAR Factors and the countervailing evidence in order to use the flawed credibility determinations to come to the conclusion he preferred. In response to a couple of other clear errors in this case, I'd like to point out that my counterpart said that there was no evidence of a rushed re-recruitment. That is clearly opposite of what the record reflects. The record reflects that APPX 468 and 469, there was an ARPA put in by Robert McCall the day that Baylene Ochoa confirmed that Potter was going to be resigning. Dr. Smith put in an ARPA that day, that day requiring that the chief nurse floor position to be reclassified. And in her statement to McCall, she says, I want this today. That's clearly a rush. When did Deering leave? Deering left, I believe, in the end of 2015 or the beginning of 2016. However, Your Honor, there is no precedent which holds that the review of independent causation ceases after the personnel action has been taken. In fact, it would be consistent with the finding in Whitmore which states, once the burden shifts to the agency, evidence only clearly and convincingly supports a conclusion when it does so in the aggregate, considering all the pertinent evidence in the record. And it's absolutely pertinent that the day Ms. Potter confirmed her resignation, the position that she had been seeking this entire time was rushed for re-recruitment. So the day she was out the door was the day they decided that they were going to re-recruit for this position. And is there any evidence that any of the decision makers with the re-recruitment knew anything about the whistleblowing? So that is a very important, very good question. So Dr. Smith was not called as a witness by the agency. The agency had an opportunity to incorporate her testimony in a previous hearing, but on three occasions decided that they were not going to. Is there any affirmative evidence that any of the decision makers with respect to the re-recruitment knew about the whistleblowing? There's no affirmative evidence in the record that she did not. Did you not have an opportunity to develop affirmative evidence on that point? She was not called as a witness, and it was the agency's burden to do so. To rebut something that there was no evidence of? Absolutely, Your Honor. Once the burden shifts to the agency, once the whistleblower makes out a prima facie case, it is the agency's burden of proof to prove by clear and convincing evidence that the personnel decision that was made would have been done so absent the whistleblower's protected disclosures. And the relevance of the rush re-recruitment was something the agency absolutely was aware of. And if they wanted to produce evidence to show that it was not interconnected, it would have been their burden to do so. In regards to the third car factor, Judge Post. Counsel, your red light is on. Okay. I think your time is up. All right. We appreciate both arguments. The case is submitted. Thank you, Your Honor.